IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINI
WHEELING DIVISION

ELECTRONICALLY
FILED
Apr 23 2026
U.S. DISTRICT COURT
Northern District of WV

DIANA MEY,

        Plaintiff,

v.

                                              5:26-cv-88 (Bailey)
Civil Action No. _____

MEDGUARD ALERT INC.

        Defendant.

## COMPLAINT

Plaintiff Diana Mey states as follows for her Complaint against Defendant MedGuard Alert Inc.:

### Parties and Jurisdiction

1. Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

2. Defendant MedGuard Alert, Inc. is a Connecticut corporation with a principal place of business located in Middletown, Connecticut.

3. At all relevant times, Defendant conducted business in West Virginia, solicited business in West Virginia, engaged in a persistent course of conduct in West Virginia, and/or has derived substantial revenue from goods sold and services provided in West Virginia.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law. This Court has supplemental

jurisdiction under 28 U.S.C. § 1367 as to the remaining claims arising under state law.

5.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  In particular, the telemarketing calls to Plaintiff occurred in this district.

**Defendant's Illegal Conduct**

6.    Defendant sells medical alert systems to consumers throughout the United States, including West Virginia. Defendant markets their medical alert systems to consumers through various means, including through unsolicited telemarketing calls and spoofed Caller IDs.

7.    Plaintiff's wireless telephone number is (304) 381-XXXX, which  has been listed on the National Do Not Call Registry continuously since December 2023. Plaintiff uses this telephone line for purely residential purposes.

8.    Plaintiff's number is assigned to a Voice over Internet Protocol (VoIP), telephone service which allows for voice calls to be placed over a broadband Internet connection.

9.    Plaintiff's number is charged by the VoIP telephone service provider VOIP.MS for each call or text is receives. VOIP.MS also charges Plaintiff a per-minute charge of $0.009 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to her number.

2

10.     Despite being listed on the DNC Registry, Defendant, directly or through one or more intermediaries, initiated telephone calls with spoofed Caller IDs to Plaintiff to induce sales of Defendant's medical alert system.

11.     On various spoofed calls, Plaintiff engaged with the callers and learned that the calls were made on behalf of Defendant.

12.     While Plaintiff has received over 60 unsolicited spoofed telemarketing calls from Defendant to her number since December 8, 2025, the following calls evidence Defendant's unlawful conduct:

a.  On December 8, 2025 at 4:54 pm, Plaintiff received a call from spoofed number 304-486-4174. The agent "John" represented that he was calling about a medical alert device with GPS technology. To identify the individual calling her illegally, Plaintiff engaged with the caller until the call abruptly disconnected.

b.  On December 8, 2025 at 5:09 pm, Plaintiff received a call back from the same spoofed Caller ID 304-486-4174. The same agent as the previous call—"John"—transferred Plaintiff to "Cathy" who said she was with MedGuard Alert. Cathy made a sales pitch to Plaintiff about a medical alert system with GPS technology and monthly monitoring. Cathy provided a phone number of 800-716-1433 for MedGuard Alert and her  direct extension of 1906.

3

c.  During this call, in order to document on whose behalf this illegal telemarketing call was made, Plaintiff permitted a charge to her Chase Visa credit card and while on the phone with Cathy, Plaintiff was logged into her online Chase Visa account and saw a debit by MedGuard Alert for $44.95 appear.

d.  At 5:28 pm—within minutes of concluding the previous call with Cathy—Plaintiff called the phone number and the direct extension that Cathy had previously provided for MedGuard Alert. Plaintiff reached Cathy's voicemail, which played a message by Cathy. Plaintiff left a message that included her number, a request to cancel her prior order, and a request not to be called again.

e.  On January 6, 2026 at 1:31 p.m., Plaintiff received a spoofed call from 304-701-5851. The caller reached Plaintiff's answering machine, leaving a message from "Amber" who said she was calling about a medical alert system with GPS technology.

f.  On January 7, 2026 at 12:38 p.m., Plaintiff received a spoofed call from 304-823-5457. The caller reached Plaintiff's answering machine where a message was recorded by a female who said she was calling about a medical alert system with GPS technology.

g.  On January 7, 2026 at 1:35 p.m., Plaintiff received a spoofed call from 304-814-8020. The caller reached Plaintiff's answering machine

4

where a message was recorded from "Alex," who said he was calling about a medical alert system with GPS technology.

h. On January 8, 2026 at 11:37 a.m., Plaintiff received a spoofed call from 304-621-6238. The caller reached Plaintiff's answering machine where a message was recorded by the same "Alex" as the previous call who said he was calling about a medical alert system.

i. On January 8, 2026, at 2:53 p.m., Plaintiff received a spoofed call from 304-881-0514. The caller reached Plaintiff's answering machine where a message was recorded from "Annie" who said she was calling about a medical alert system with GPS technology.

j. Between January 9 and January 30, 2026, Plaintiff received an additional 51 unsolicited marketing calls from various spoofed Caller ID's about a medical alert system with GPS technology in which the callers used virtually the same scripted message as those previously tied to MedGuard Alert. These callers reached Plaintiff's answering machine where a message was recorded by many of the same agents as earlier calls about a medical alert system with GPS technology.

k. On January 31, 2026 at 10:13 a.m., Plaintiff answered a spoofed call from 304-830-5023 from "Nancy" who said she was calling about a medical alert system with GPS technology.  To identify the individual calling her illegally, Plaintiff engaged with this caller. Plaintiff was transferred to "James" who said his records showed Plaintiff already

had one of their monitoring devices before abruptly disconnecting the call.

l.  On January 31, 2026 at 11:24 a.m., Plaintiff answered a spoofed call from 304-906-4742 from "Maddie" who said she was calling about a medical alert system with GPS technology.  To identify the individual calling her illegally, Plaintiff engaged with this caller. Plaintiff told Maddie to stop calling her and further requested that her number be removed from MedGuard Alert's calling list.

13.    Prior to receiving these telephone calls from or on behalf of Defendant, Plaintiff never provided prior express written consent to be called by or on behalf of Defendant.

14.    In all instances, Defendant, acting directly or through one or more intermediaries, "spoofed" their calls by transmitting phony caller identification information so that call recipients do not know the true source of the calls.

15.    In numerous instances, Defendant, acting directly or through one or more intermediaries, failed to disclose truthfully, promptly and in a clear and conspicuous manner to the person receiving the call (a) the identity of the seller, (b) that the purpose of the call was to sell goods or services, or (c) the nature of the goods or services.

6

**COUNT I**
**Violations of the TCPA**
**(47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2))**

16.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

17.    Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf made telemarketing calls to Plaintiff's residential telephone, which was listed on the do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

18.    Despite her number being registered on the DNC Registry, Plaintiff received more than one telephone call within a 12-month period by or on behalf of Defendant in violation of the TCPA.

19.    Defendant's violations were negligent, willful, and knowing.

**COUNT II**
**Violations of the TCPA**
**(47 U.S.C. § 227(c) and 47 C.F.R. § 64.1601(e))**

20.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

21.    Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, initiated telemarketing calls which failed to transmit the requisite caller identification information and which likewise failed to permit an individual to make a do-not-call request during regular business hours. *See* 47 C.F.R. § 64.1601(e).

## COUNT III
### Violations of the WVCCPA, W.Va. Code §§ 46A-6F-112 and 501

22.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

23.     Defendant and/or their agents committed abusive acts or practices as defined by W.Va. Code § 46A-6F-601(a)(2) because they engaged Plaintiff repeatedly or continuously with behavior a reasonable person would deem to be annoying, abusive, or harassing.

24.     Defendant and/or their agents committed abusive acts or practices as defined by W.Va. Code § 46A-6F-601(a)(3) because they initiated outbound calls to Plaintiff after she had indicated that she did not want to receive such calls.

25.     Defendant and/or their agents knowingly engaged in the transmission of misleading or inaccurate caller identification information, including, but not limited to, circumventing caller identification technology that allows consumers to identify from what phone number or organization the call has originated from, or to otherwise misrepresent the origin and nature of the solicitation. *See* W.Va. Code § 46A-6F-501(9).

26.     Each of Defendant's actions, or those of agents operating on Defendant's behalf, were done willfully or knowingly.

27.     Accordingly, Plaintiff is entitled to relief from Defendant as prescribed under W.Va. Code §§ 46A-6F-502 and 701, including actual damages and statutory

8

penalties. Plaintiff is likewise entitled to reasonable attorney's fees under W.Va. Code § 46A-5-104.

WHEREFORE, Plaintiff demands from Defendant statutory penalties and damages as provided by law, pre- and post-judgment interest, costs, attorney's fees, and whatever further relief the Court deems appropriate.

**JURY TRIAL DEMANDED**

**DIANA MEY**

By Counsel:

/s/ Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com